UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| DEBRA MOUSAVI, | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | 10 C 4765 |
| | ) | |
| PARKSIDE OBSTETRICS, | ) | |
| GYNECOLOGY & INFERTILITY, S.C. | ) | |
| and HELAYNE MERKIN, M.D., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

CHARLES P. KOCORAS, District Judge:

This matter comes before the Court on the motions of Defendants Parkside Obstetrics Gynecology and Infertility, S.C. ("Parkside") and Helayne Merkin, M.D. ("Dr. Merkin") (collectively, the "Defendants") for summary judgment pursuant to Federal Rule of Civil Procedure 56. Defendants also moved for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c). For the reasons set forth below, the motion for judgment on the pleadings and the motion for summary judgment are granted.

## BACKGROUND

On February 16, 2009, Parkside, a medical practice, hired Debra Mousavi ("Mousavi") as an at-will employee to serve as its office manager. Among other duties, Mousavi was in charge of (1) preparing the credential applications for physicians and submitting the documents to insurance companies, (2) screening candidates and

conducting employee interviews, (3) managing payroll, (4) effectuating payments, and (5) ensuring that Parkside employees did not work beyond their scheduled hours.

At the beginning of Mousavi's employment, Megan Bruce ("Megan"), another Parkside employee, trained Mousavi on how to handle Parkside's payroll. Megan explained that when an employee worked more than 40 hours per week, the overtime hours were not paid at a premium rate but were "banked" for future use. In other words, when an employee worked less than 40 hours in a week, any hours he had "banked" would allow him to get compensated as if he had worked a 40-hour week.

During her training, Mousavi discovered that one employee, Kay Taylor ("Taylor"), had accumulated 14 hours of overtime pay. Convinced that this practice was illegal, Mousavi went, along with Megan, to Dr. Merkin's office to discuss the issue. Mousavi notified Dr. Merkin that some employees had worked overtime, that their hours had been banked, but that none of them had been paid overtime. Mousavi suggested that, to render the office compliant with regulations, Parkside needed to pay out all the overtime, and Mousavi would guarantee that, from then on, no one would work overtime. Dr. Merkin responded that Parkside did not pay overtime.

On June 29, 2009, Dr. Merkin gave Mousavi a negative performance review because several key areas of her work needed improvement. According to Dr. Merkin, Mousavi mishandled the interview process for a front desk position because she did not

conform to the time-line they had agreed upon. Instead, it was left for Dr. Merkin to complete the hiring process. Mousavi also mismanaged the credential application process of a newly-hired physician. Mousavi failed to submit the required documents, sent the credential documents to the wrong address, and used an incorrect amount of postage. As a result, several applications were rejected and sent back to be completed properly. These errors caused delay in payments to the practice and in the physicians' application process. In a letter responding to Dr. Merkin's negative performance review, Mousavi admits that she mishandled the interviewing process by stating that it is "my fault I did not message you on Friday [. . .] I should not have taken this into consideration with my delay." Mousavi also admits that she made an error by sending the applications to the wrong address. In her deposition, when asked "isn't it true that when you did submit [the doctor's] credentialing papers, [. . .] you submitted them to Tricare South instead of Tricare North?" Mousavi answered "yeah." However, Mousavi disputes that she committed any other error that contributed to the delay and rejection of the applications. In particular, Mousavi maintains that sending the applications was contingent upon receipt of a signed diploma from an outside person. Mousavi also claims that the postage she used was in accordance with her training.

Dr. Merkin had initially planned to review Mousavi's work six weeks after the unfavorable performance review. However, Mousavi's performance deteriorated at a

quicker pace. Mousavi continued to mishandle the credential application process causing the practice time and money. Mousavi also misdated checks, ordered and used credit cards without approval, and caused the practice to lose money by failing to pay past due bills or by effectuating duplicate payments. Mousavi does not dispute that she used Parkside's credit cards without Dr. Merkin's approval. Mousavi purports to dispute the fact that she mishandled checks but cites to portions of her deposition which she failed to attach to her response to Defendants' motion for summary judgment. Finally, Mousavi admits that she made duplicate payments. A review of Mousavi's deposition reveals that when opposing counsel asked her "[so] the same bill was paid twice [?]" Mousavi answered "correct."

Taking all these factors into account, Dr. Merkin decided on July 21, 2009, that she would dismiss Mousavi. On that day, however, Mousavi left the office on medical leave. Later that day, Mousavi informed Parkside that she would return to work on August 3, 2009. Dr. Merkin claims that, rather than firing her over the phone, she opted for a face-to-face meeting to inform Mousavi of her dismissal.

An exchange of letters and e-mails followed. On July 22, 2009, Dr. Merkin sent Mousavi a letter informing her that, based on Parkside's sick leave policy, she would not receive compensation for the last two weeks of July. On July 30, 2009, Mousavi responded with an e-mail advising Dr. Merkin that she was entitled to payment for some

days she had actually worked during the month of July. In the e-mail, Mousavi reiterated her March 2009 conversation about Parkside's alleged illegal overtime practices. On the same day, Mousavi sent a follow-up e-mail describing Dr. Merkin as being "mad" about Mousavi's complaints regarding Parkside's non-compliance with federal law. Mousavi also threatened that if she did not get compensated, she would file a lawsuit. On August 1, 2009, Dr. Merkin sent another letter asking Mousavi to report to her office on August 3. On August 3, 2009, Mousavi went to Parkside and Dr. Merkin terminated her employment.

The parties now dispute the exact date and reason Dr. Merkin decided to terminate Mousavi. Dr. Merkin alleges that she decided to terminate Mousavi on July 21, 2009, based on her deficient work performance. In contrast, Mousavi maintains that Dr. Merkin could not have decided to terminate her on July 21, 2009, because during her absence for sick leave, both parties communicated on whether Mousavi was entitled to paid sick leave. According to Mousavi, Dr. Merkin reached a decision after receiving the July 30, 2009 e-mails, whereby Mousavi urged Parkside to comply with federal laws or face a lawsuit. Dr. Merkin claims that the overtime pay issue surfaced on July 30, 2009, when Mousavi suspected she was facing imminent termination.

On July 30, 2010, Mousavi filed a complaint against Dr. Merkin and Parkside. The only remaining claim against Defendants is a retaliatory discharge claim under the

Fair Labor Standards Act ("FLSA"). Defendants now move for summary judgment on the retaliatory discharge claim.

## LEGAL STANDARD

### I. Judgment on the Pleadings

Federal Rule of Civil Procedure 12(c) allows a party to move for judgment on the pleadings after the complaint and the answer have been filed. Fed. R. Civ. P. 12(c); *Brunt v. Serv. Emps. Int'l Union*, 284 F.3d 715, 718 (7th Cir. 2002). When considering a motion for judgment on the pleadings, the court regards all well-pleaded facts as true, views them in the light most favorable to the plaintiff, and draws all reasonable inferences in favor of the plaintiff. *Hentosh v. Herman M. Finch Univ. Of Health Scis./ Chi. Med. Sch.*, 167 F.3d 1170, 1173 (7th Cir 1999). A court should grant a Rule 12(c) motion only when it appears beyond a doubt that the plaintiff cannot prove any facts to support a claim for relief. *Forseth v. Vill. of Sussex*, 199 F.3d 363, 368 (7th Cir. 2000). The complaint need only "narrate a claim," and need not depend on a particular theory of recovery. *Id*. at 367. "A plaintiff may supplement the complaint with factual narration in an affidavit or brief. If the extra assertions make out a claim, then the complaint stands." *Albiero v. City of Kankakee*, 122 F.2d 417, 419 (7th Cir. 1997).

### II. Summary Judgment

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to

any material fact and that the movant is entitled to summary judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists when the evidence is such that a reasonable jury could find for the nonmovant. *Buscaglia v. United States*, 25 F.3d 530, 534 (7th Cir. 1994). The movant in a motion for summary judgment bears the burden of demonstrating the absence of a genuine issue of material fact by specific citation to the record; if the party succeeds in doing so, the burden shifts to the nonmovant to set forth specific facts showing that there is a genuine issue of fact for trial. Fed. R. Civ. P. 56(e); *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). In considering motions for summary judgment, a court construes all facts and draws all inferences from the record in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). With these principles in mind, we turn to Mutual Life's motion.

## DISCUSSION

### I. Judgment on the Pleadings

Defendants first argue that they are entitled to judgment on the pleadings pursuant to Rule 12(c) because Mousavi failed to plead in her complaint that Parkside is an employer covered by the FLSA. Mousavi responds that the Court can infer from the complaint that Parkside is covered by the FLSA. To establish jurisdiction for an overtime violation under the FLSA, the plaintiff employee must show either,

(1) enterprise coverage - that the employer was engaged in commerce or in the production of goods for commerce, or (2) individual coverage - that the employee was engaged in commerce or in the production of goods for commerce. 29 U.S.C. § 207(a)(1). The Court cannot reasonably infer from the complaint that Parkside or Mousavi are covered by the FLSA. It is incumbent on Mousavi that she allege that Parkside is an employer covered by the FLSA. Mousavi has failed to do so. Additionally, no proof is offered, for summary judgment purposes, that Mousavi has such proof. Indeed, the Defendants assert that Mousavi took no discovery relating to "enterprise" status that might be used at trial. For these reasons, Defendants' motion for judgment on the pleadings is meritorious and is granted.

**II.     Motion for Summary Judgment**

We shall consider the motion for summary judgment, notwithstanding the ruling on the motion for judgment on the pleadings. To prove retaliation under the FLSA, a plaintiff can proceed under the direct method by showing that he or she engaged in a statutorily protected expression, that he suffered an adverse employment action, and that there is a causal connection between the two. *Jennings v. Tinley Park Cmty. Consol. Sch. Dist.*, 796 F.2d 962, 966-67 (7th Cir. 1986). This can be shown through either direct evidence or the indirect method of proof. *Rudin v. Lincoln Land Cmty. Coll.*, 420

F.3d 712, 720-21 (7th Cir. 2005).[1] The parties do not dispute that Mousavi suffered an adverse employment action.

A.  **Protected Activity**

Relying primarily on *McKenzie v. Renberg's Inc.*, 94 F.3d 1478 (10th Cir. 1996), Defendants argue that they are entitled to summary judgment because Mousavi's act of reporting her concerns about Parkside's alleged overtime pay violations did not rise to the level of "protected activity." According to Defendants, Mousavi never asserted any rights under the FLSA because, as the office manager, she was merely performing her duties of keeping the office compliant with federal law.

The FLSA's anti-retaliation provision provides that it is unlawful for an employer "to discharge . . . any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under [the FLSA]." 29 U.S.C. § 215(a)(3). Federal courts have interpreted Section 215(a)(3) very broadly. *See Crowley v. Pace Suburban Bus Div. of Reg. Transp. Auth.*, 938 F.2d 797, 798 n. 3 (7th Cir. 1991); *see also Ergo v. Int'l Merchant Servs, Inc.*, 519 F. Supp. 2d 765, 778 (N.D.

---

[1] To make out a *prima facie* FLSA retaliation claim under the indirect method, the plaintiff must show, among other elements, that (1) she performed her job according to her employer's legitimate expectations, and (2) was treated less favorably than similarly situated employees who did not engage in statutorily protected activity. *Cichon v. Exelon Generation Co.*, No 02 C 3441, 2003 WL 22169761, at *4 (N.D. Ill. Sept. 18, 2003). Because Mousavi does not make a case that she performed her job according to legitimate expectations and that she was treated less favorably than other similarly situated employees, she has chosen not to proceed under the direct method.

Ill. 2007) (listing cases). Oral complaints made by an employee to her supervisor are protected expressions. *Kasten v. St.-Gobain Perf. Plastics Corp.*, 131 S. Ct. 1325, 1336 (2011). The Seventh Circuit has not addressed the exact contours of "protected activity." Therefore, we look to other federal courts for guidance. According to the *McKenzie* court, the hallmark of protected activity under Section 215(a)(3) is the assertion of statutory rights through some action adverse to the company. *Id*. at 1486. To engage in protected activity, "the employee must step outside . . . her role of representing the company and either file (or threaten to file) an action adverse to the employer, actively assist other employees in asserting FLSA rights, or otherwise engage in activities that reasonably could be perceived as directed towards the assertion of rights protected by the FLSA." *Id*. at 1486-87.

In the instant case, two incidents potentially fall within the ambit of Section 215(a)(3). The first incident occurred in March 2009, when Mousavi complained, on behalf of one employee, Taylor, about Parkside's practices of overtime pay. This incident does not rise to the level of protected activity. When Mousavi informed Dr. Merkin about the potential violation of the FLSA, she did so in furtherance of her work responsibilities, which included managing the payroll and ensuring that employees did not work overtime and that Parkside complied with federal law. By simply alerting Dr. Merkin about Parkside's potential overtime violations, Mousavi did not take any

action adverse to the company nor did she exceed her responsibilities as office manager. To borrow the language of the *McKenzie* court, Mousavi did "not cross the line from being an employee merely performing her job to an employee lodging a personal complaint." This warning could not reasonably have been perceived by Dr. Merkin as the assertion of Mousavi's, or Taylor's, rights under the FLSA. Therefore, the March 2009 incident did not constitute protected activity.

**B.     Causal Connection**

The decision to terminate Mousavi's employment was made on July 21, 2009, months after Mousavi's March, 2009 conversation. Because Mousavi left work early that day due to "medical issues" and said she would not return to work until August 3, 2009, Dr. Merkin decided to wait for Mousavi to return to work to tell her of her termination rather than doing so on the telephone.

During her absence from work and while Mousavi admittedly believed her job was in jeopardy, she conferred with her attorney who helped draft two e-mails on issues related to her pay and reiterating her conversation with Dr. Merkin four months before. It is these e-mails which are claimed to be the second instance of retaliation. The first e-mail referred to the March 30, 2009 conversation about Taylor's overtime pay and the follow-up e-mail threatened a lawsuit if Mousavi did not receive compensation for the days she had actually worked.

Defendants argue that Mousavi cannot, as a matter of law, establish a causal connection between her complaints and the decision to terminate her employment. In response, Mousavi offers circumstantial evidence of suspicious timing. Specifically, Mousavi maintains that a causal link is established because she was fired on August 3, 2009, in retaliation for sending the July 30, 2009 e-mails.

The late July 2009 e-mail reiterating a March 2009 conversation creates too great a gap to create a causal connection between claimed protected activity and Mousavi's termination. Nor does it suffice to permit the conclusion that Mousavi has "stepped out" of her professional role.

Aside from the gap between the March complaint, reiterated in late July, and the termination of employment decision, the overwhelming evidence establishes that Mousavi was discharged after a series of professional deficiencies. Mousavi admitted that she mishandled the interview process for the front desk position, that she sent applications to the wrong address, and does not dispute that, after being admonished, continued to mishandle the credential application process. Mousavi also does not dispute that she misdated checks, ordered and used credit cards without approval, and admitted that she caused the practice to lose money by failing to pay past due bills or by making duplicate payments. Apart from timing, Mousavi has not offered evidence showing that her July 30, 2009 complaints caused Dr. Merkin to fire her. Quite to the

contrary, the succession of professional lapses shows that the July 2009 e-mails did not factor in the equation. Mousavi was discharged on August 3, 2009, not because she had sent a written complaint on July 30, 2009, but because August 3 was the first day she returned back to work. Because Mousavi did not demonstrate the existence of a causal link between the assertion of her right and her termination, she has not demonstrated a *prima facie* case for retaliation under the FLSA. For all the above reasons, Defendants' motion for summary judgment is granted.

## CONCLUSION

Based on the foregoing analysis, Defendants' motions for judgment on the pleadings and for summary judgment are granted.

_____
Charles P. Kocoras
United States District Judge

Dated:   August 16, 2011